UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| SYNERGI PARTNERS, INC., *Plaintiff,* v. PARADIGM SMD GROUP, LLC, d/b/a HIRETECH, PARADIGM NATIONAL CONSULTANTS, LP, d/b/a HIRETECH, TRAVIS KNOTTS, and MARLA CAPLAN *Defendants*. | Civil Action No.: **COMPLAINT** **JURY DEMANDED** |

Plaintiff Synergi Partners, Inc. ("Synergi" or "Plaintiff"), by and through undersigned counsel, brings this Complaint for Injunctive Relief and Damages against Defendants Paradigm SMD Group, LLC, Paradigm National Consultants, L.P. (Paradigm SMD Group, LLC and Paradigm National Consultants, LP are collectively referred to herein as "HIREtech"), Travis Knotts ("Knotts"), and Marla Caplan ("Caplan"), alleges the following:

### I.   PARTIES

1. Synergi is a South Carolina corporation having a principal place of business at 151 West Evan Street, Florence, South Carolina 29501.

2. Paradigm SMD Group, LLC is a Texas limited liability company whose registered agent, Karim Solanji, may be served at 1500 South Dairy Ashford, Suite 240, Houston, Texas 77077, or wherever he may be found.

1

3. Paradigm National Consultants, LP is a Texas limited partnership whose registered agent, Karim Solanji, may be served at 1500 South Dairy Ashford, Suite 240, Houston, Texas 77077, or wherever he may be found.

4. Knotts is an individual residing in Harris County, Texas and may be served at his residence, 913 Cordell Street, Houston, Texas 77009, or wherever he may be found.

5. Caplan is an individual residing in Montgomery County, Maryland and may be served at her residence, 9209 Fall River Lane, Potomac, Maryland 20854, or wherever she may be found.

## II.   JURISDICTION AND VENUE

6. This Court has personal jurisdiction over Defendants because they are residents of the State of Texas and/or committed a tortious act in whole or in part in Texas as provided by TEX. CIV. PRAC. & REM. CODE § 17.042.

7. Venue is appropriate pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

8. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 over the claims herein arising under federal law and supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) for all other claims herein. Further, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because Plaintiff is a citizen of only South Carolina and Defendants are not citizens of South Carolina.

## III.   FACTS

9. Synergi is in the business of identifying tax credits and other incentives for its customers. One of the tax credits that Synergi identifies and calculates for its customers is the Work Opportunity Tax Credit, or "WOTC", which provides employers with a tax credit for hiring

individuals from certain targeted groups, members of which have faced barriers to employment. Synergi also has relationships with partner businesses that assist Synergi with providing tax credit-related services to its customers.

10. On or about January 2, 2019, Synergi was domesticated in South Carolina from Alabama, where Synergi was formerly incorporated as Neon Workforce Technologies, Inc. Synergi began the process of moving its corporate headquarters from Alabama to South Carolina on or about January 11, 2018.

11. Caplan is a former Synergi employee, and her last day of employment was Synergi was on or about December 14, 2018. During her employment with Synergi, Caplan was responsible for ensuring customer satisfaction with the services Synergi provided. To facilitate this, Caplan had access to certain of Synergi's trade secrets and confidential information, including but not limited to the following: the technology used by Synergi and/or its business partners in connection with Synergi's business; the identity of Synergi's customers and partners; contact information for Synergi's customers and partners; account information for Synergi's customers such as WOTC statements and associated financial information and related facts (*e.g.*, tax identification numbers, tax credit amounts, employee social security numbers, employee names and addresses); the fees associated with Synergi's services; and other valuable information (collectively referred to herein as "Trade Secrets and Confidential Information").

12. Synergi's Trade Secrets and Confidential Information are not ascertainable through publicly available sources, and are an invaluable asset in this highly competitive industry. Synergi has invested extensive resources, including both financial resources and manpower, to develop the technology used in its business and to develop and maintain customer relationships.

3

13. On January 8, 2019, Synergi discovered that Caplan now works for HIREtech, or one of HIREtech's affiliates. This discovery was made as a result of receiving the communication below (the "Little League Communication"), which, upon information and belief, was distributed via LinkedIn:

> HIREtech is proud to introduce Marla Caplan as Director – Partnerships. Marla is a Major League talent that has been successful with little league technology. Marla will do a phenomenal job promoting our industry leading technology and building lasting partnerships. – Travis Knotts, Vice President - Sales

14. Upon information and belief, HIREtech provides competing services to Synergi, including identifying and calculating WOTC incentives for customers.

15. The next day, Knotts, in his role as HIREtech's Vice President of Sales, distributed the communication below (hereinafter referred to as the "WOTC Communication") via the internet to one or more of Synergi's customers that, upon information and belief, was identified to HIREtech through Caplan's disclosure of Trade Secrets and Confidential Information:

> From: Travis Knotts <tknotts@hiretech.com>
> Sent: Wednesday, January 09, 2019 12:40 PM
> To: [redacted]
> Cc: Bobby Zimmer <bzimmer@hiretech.com>
> Subject: HIREtech Follow-Up
>
> [redacted]
>
> I would love to have a conversation with yall sooner rather than later. I don't know if this has crossed your plate yet regarding our hire of one of the executives that has been at Synergi (Marla Caplan) for the past 8 years or so...but now that we have the facts of your current WOTC program I think the conversation will move the needle for maximizing your credits this year and moving forward. Please let me know a time and date that works best for you.
>
> All The Best,
>
> Travis Knotts
>
> <image002.jpg>    **Travis Knotts**         <image003.png>
>                   **Vice President- Sales**
>                   tknotts@hiretech.com

16. Knotts sent the WOTC Communication to one or more of Synergi's customers, including CUSTOMER A, with whom Caplan had no relationship during her employment with Synergi. Accordingly, upon information and belief, Caplan obtained contact information for the one or more Synergi customers, including the "facts of [their current WOTC program," through improper means, specifically her unauthorized access and retention of Synergi's Trade Secrets and Confidential Information.

17. The statement "now that we have the facts of your current WOTC program, I think the conversation will move the needle for maximizing your credits this year and moving forward," in the WOTC Communication makes evidence that Caplan not only improperly accessed and removed Synergi's Trade Secrets and Confidential Information but also disclosed Synergi's Trade Secrets and Confidential Information to HIREtech. Moreover, the WOTC Communications makes clear that, Defendants are using the Synergi's Trade Secrets and Confidential Information to unlawfully compete with Synergi.

18. Further, by referring to Synergi's technology as "little league," the Little League Communication suggests that Caplan disclosed Synergi's Trade Secrets and Confidential Information regarding Synergi's technology to HIREtech, and that Defendants are using the associated Trade Secrets and Confidential Information to unlawfully compete with Synergi.

19. All conditions precedent to Synergi's recovery and the claims made the subject of this suit have been performed or have occurred.

## IV.   CAUSES OF ACTION

**A.   Violations of the Defend Trade Secrets Act of 2016 (against all Defendants)**

20. Plaintiff incorporates by reference the foregoing allegations as if fully set forth verbatim herein.

21.     By using the Trade Secrets and Confidential Information in the ways disclosed herein, Defendants have misappropriated, used and/or disclosed Plaintiff's Trade Secrets and Confidential Information.

22.     Plaintiff took reasonable steps to protect the Trade Secrets and Confidential Information, including specifically notifying Caplan of the fact that Trade Secrets and Confidential Information should not be disclosed to unauthorized persons in person and through an employee handbook.  For example, and not limitation, Caplan received an employee handbook (the "Employee Handbook") in which Caplan agreed to protect the Trade Secrets and Confidential Information by maintaining the secrecy of the Trade Secrets and Confidential Information and by limiting use of the Trade Secrets and Confidential Information as follows:

> **8.0  Confidential Information:**  Main Office Employees; Outside Main Office Employees; Federal Defend Trade Secrets Act Immunity
>
> **8.1  Main Office Employees:**  For employees who work at the Company main offices: Confidential information at work, when not in use, must be secured in locked files.  Confidential matters never leave Company property, must always be stored in appropriate places and must be relinquished upon termination of employment.
>
> **8.2  Outside Main Office Employees:**  For employees who work outside the Company main offices:  Confidential information must be retained separate from personal information to ensure that no one other than the employee has access to Company confidential information. All Company information, written/printed materials, passwords, computer files, property and all other work product performed by an employee or independent contractor on behalf of Company remains the sole property of the Company.  All such information and materials must be returned to Company upon request and/or termination of employment or any contractual agreements.
>
> Confidential matters are to be discussed with other employees only as necessary and appropriate to conduct daily business and meet the Company's responsibility to provide services.  Unauthorized release of confidential information is grounds for disciplinary action up to and including termination of employment.
>
> **8.3  Federal Defend Trade Secrets Act Immunity:**  Pursuant to 18 U.S.C. section 1833(c), Employee is hereby notified of the immunity provided in 18 U.S.C. section 1833(b), which provides as follows:

4823-4554-3301.4

8.3 (a) <u>Immunity from Liability for Confidential Disclosure of a Trade Secret to the Government or in a Court Filing</u>: An individual shall not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that (A) is made (i) in confidence to a federal, state or local government official, either directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (B) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal.

8.3 (b) <u>Use of Trade Secret Information in Anti-Retaliation Lawsuit</u>: An individual who files a lawsuit for retaliation by an employer for reporting a suspected violation of law may disclose the trade secret to the attorney of the individual and use the trade secret information in the court proceeding, if the individual (A) files any document containing the trade secret under seal; and (B) does not disclose the trade secret, except pursuant to court order.

**9.2 <u>Strictly Prohibited Use</u>:**

- You are STRICTLY PROHIBITED from using, sending, receiving, printing, copying or otherwise disseminating obscene, racist, sexist or otherwise offensive material in any form. See the Anti-Harassment and Anti-Discrimination Policy at Section 4.18 for more information.
- You are STRICTLY PROHIBITED from deliberately performing any act that may adversely affect the operations of Company systems, are wasteful of company resources or that may cause embarrassment to, or otherwise be adverse to the interests of the Company. Company-supplied telephones, including cell phones, are to be used solely for business usage.
- You are STRICTLY PROHIBITED from accessing or disseminating proprietary data, trade secrets or other confidential Company information for any uses other than those necessary to performing your legitimate assigned duties.

**9.3 <u>Security and Password Protection</u>:** Users of cellular, portable telephones, computers and the Internet and other forms of communication should be aware that these are not secure communication channels and the employee should act accordingly. Confidential information sent via internet, email or stores on portable computers or other devices should be protected by password or encryption. You are responsible for keeping your passwords secure and are accountable for the use of Company technology by anyone you permit to use your passwords. Employees should have no expectation of privacy in their use of computer property and communication resources. The Company reserves the right to monitor any and all of your communications, including email, voicemail and internet connectivity to ensure compliance with the Company's policies and standards. Monitoring can occur at any time, with or without prior notification. Information so obtained may be used to document misconduct or criminal activity, and may be disclosed to appropriate individuals. Employees are expected to log off or lock/shut down their

7

computers at the close of each day, or upon leaving a computer for a period longer than 1 hour.

**9.8 Telecommuting:** [Employees] must strictly adhere to the security controls as outlined in our IT security policies. These controls include but are not limited to encryption of transmissions and confidential data at rest. These controls also include secure access from a corporate network or VPN and accessed from a secure environment. Employees' laptop and desktop equipment must include strong passwords, and be configured with encrypted storage devices. Employees are prohibited from removing or transferring confidential information to an unsecure environment. This includes transmitting unencrypted files by email or storing confidential information on a removable or insecure storage device. Management may consider telecommuting as a viable alternative work arrangement. It is not an entitlement, or a companywide benefit, and in no way changes the terms and conditions of employment with the company.

(The Employee Handbook is provided as **Exhibit A**; pp 20-22.)

23. At 8:37 AM on November 2, 2018, Caplan digitally signed the Employee Handbook to confirm that she understood its terms and agreed to abide by the policies and procedures contained therein. (Ex. A p. 2).

24. Further, Caplan's knowledge of the confidential nature of the Trade Secrets and Confidential Information is confirmed by her conversations with one or more Synergi employees regarding confidentiality.

25. Caplan knew that the Trade Secrets and Confidential Information were protected information and were not to be disclosed to unauthorized individuals, yet willfully and maliciously misappropriated the Trade Secrets and Confidential Information to unlawfully compete with Plaintiff, including by acquiring the Trade Secrets and Confidential Information by improper means and disclosing the Trade Secrets and Confidential Information to Defendants. Upon information and belief, HIREtech and Knotts knew or had reason to know that the Trade Secrets and Confidential Information were protected and not rightfully possessed by HIREtech, yet willfully and maliciously acquired and used the Trade Secrets and Confidential Information to compete with Plaintiff.

26.     Plaintiff has been damaged as a result of Defendants' use of the Trade Secrets and Confidential Information.

27.     Plaintiff demands judgment against Defendants for such damage, including injunctive relief, actual damages, damages for unjust enrichment, exemplary damages, attorneys' fees, costs and interest, as well as all other relief provided by 18 U.S.C. § 1836(b).

**B.     Violations of the Texas Uniform Trade Secrets Act (against all Defendants)**

28.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth verbatim herein.

29.     Caplan acquired the Trade Secrets and Confidential Information through improper means and/or disclosed the Trade Secrets and Confidential Information that she knew or had reason to know was to be maintained as a secret and not disclosed to unauthorized persons, including HIREtech.

30.     HIREtech and Knotts acquired the Trade Secrets and Confidential Information from Caplan, and, at the time the Trade Secrets and Confidential Information were disclosed to HIREtech and Knotts and/or used by HIREtech and Knotts, knew or had reason to know that Caplan's knowledge of the Trade Secrets and Confidential Information was derived using improper means and/or acquired under circumstances giving rise to a duty owed to Synergi to maintain the secrecy of, or limit use of, the Trade Secrets and Confidential Information.

31.     As set forth above, Defendants have willfully and maliciously misappropriated, used, and disclosed Plaintiff's trade secrets in violation of the Texas Uniform Trade Secrets Act, TEX. CIV. PRAC. & REM. §§ 134A.001 to 134A.008.

32.     Defendants should be held liable to Plaintiff for all actual damages caused by such violations, as well as for exemplary or punitive damages.

4823-4554-3301.4

**C.      Conversion of Confidential Information (against all Defendants)**

33.      Plaintiff incorporates by reference the foregoing allegations as if fully set forth verbatim herein.

34.      Plaintiff disclosed to Caplan substantial amounts of its confidential information, documents, and other Trade Secrets and Confidential Information, all of which constituted its proprietary information and property. Plaintiff brings this action to enjoin and/or recover for any actual or threatened use or disclosure, and therefore conversion of such proprietary information and Trade Secrets and Confidential Information by Defendants, as well as any other company with which Caplan is or becomes associated, and to prevent the inevitable or probable conversion or use of such information and property rights.

**D.      Common Law Unfair Competition (against all Defendants)**

35.      Plaintiff incorporates by reference the foregoing allegations as if fully set forth verbatim herein.

36.      Plaintiff has expended great amounts of time, labor, skill, and money in developing its Trade Secrets and Confidential Information. Caplan acquired knowledge of such information by virtue of her employment with Plaintiff. Plaintiff reasonably fears that Defendants have used that information in direct competition with Plaintiff, and will continue to do so unless enjoined, giving Defendants a special competitive advantage because Defendants are not burdened with the time and expense of developing or acquiring the confidential and proprietary information. Defendants' actions have caused and, unless enjoined from continuing to benefit from the use of Plaintiffs Trade Secrets and Confidential Information, will continue to cause irreparable injury and damage to Plaintiff for which Plaintiff has no adequate remedy at law.

**E.     Attorneys' Fees and Expenses**

37.     Plaintiff is entitled to recover reasonable and necessary attorneys' fees and expenses for Caplan's breach of contract under Chapter 38 of the Texas Civil Practice and Remedies Code. Plaintiff is further entitled to recover reasonable and necessary attorneys' fees and expenses for Defendants' theft of trade secrets in violation of the Texas Uniform Trade Secrets Act. TEX. CIV. PRAC. & REM. CODE § 134A.001 *et seq.*

## V.  PRAYER

WHEREFORE, Plaintiff prays that Defendants be cited to appear and answer herein, and that the Court grant Plaintiff's application for temporary restraining order, temporary injunction and permanent injunction, and that upon final hearing or trial hereof, Plaintiff has judgment against Defendants for all relief prayed for herein, including all actual and exemplary damages, reasonable and necessary attorneys' fees and expenses, and costs of suit, prejudgment and post-judgment interest, and such other and further relief, general or special, at law or in equity to which Plaintiff may be justly entitled.

January 16, 2019                                       Respectfully submitted,

**FOLEY GARDERE
FOLEY & LARDNER LLP**

By:     */s/ Jessica Glatzer Mason*
             Jessica Glatzer Mason
             Federal I.D. No. 617542
             Texas State Bar No. 24051001
             Michael R. Rahmn
             Federal I.D. No. 1124407
             Texas State Bar No. 24074924
1000 Louisiana Street, Suite 2000
Houston, Texas 77002-5007
Telephone:     (713) 276-5500
Facsimile:       (713) 276-5555
Email:             jmason@foley.com
                       mrahmn@foley.com

4823-4554-3301.4

*Of Counsel*

**HAYNSWORTH SINKLER BOYD, P.A.**
Jeffrey T. Stover
Pierce T. MacLennan
Ashley B. Hogsette
134 Meeting Street, 3rd Floor
Charleston, South Carolina 29401
Telephone: (843) 576-2801
Facsimile: (843) 722-2266
Email:  jstover@hsblawfirm.com
           pmaclennan@hsblawfirm.com
           ahogsette@hsblawfirm.com

                                            **ATTORNEYS FOR PLAINTIFF**
                                            **SYNERGI PARTNERS, INC.**